IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TAMI TODD, a/k/a Tamarah T. Grimes,<br><br>    Plaintiff,<br><br>v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    Defendant. | CIVIL ACTION NO.<br>11-AR-3811-S |

**MEMORANDUM OPINION**

Any *pro se* plaintiff who sues an agency of the United States does not need to admit, as this plaintiff does, that she needs a lawyer. This even more true when the agency is the Department of Justice ("DOJ"). It would take a very good lawyer, with a lot of time, to undertake plaintiff's representation in this case with any possibility of success. This may explain why plaintiff no longer has a lawyer. Although she has worked for a United States Attorney, whose office she now complains about, it quickly becomes obvious that she is no lawyer and badly needs one. There are many reasons why an excellent and dedicated lawyer could not win this case. The court will address some of them, not necessarily in the order of their importance. The well reasoned findings and conclusions of the Equal Employment Opportunity Commission ("EEOC") Administrative Judge hereinafter referred to would have constituted

a final and binding adjudication of the dispute if plaintiff had not filed this action as her only alternative to taking an appeal to the EEOC.  The court will give the opinion of the Administrative Judge no deference and will examine plaintiff's case *de novo* as if the dispute had not already wandered at length through the administrative labyrinth.  There is, of course, a difference between an appellate "review" by the EEOC of an administrative finding and a separate civil action filed in a United States District Court.  Either procedure was allowed to plaintiff.  She filed civil action in this court.  It will be examined as if it had been filed here in the first place.

   The court now has before it the motion filed on January 27, 2012, by defendant, Eric H. Holder, Jr. ("Holder"), in his official capacity as Attorney General of the United States, to dismiss the action of plaintiff, Tami Todd, a/k/a Tamarah T. Grimes ("Todd"), or alternatively, for summary judgment. (Doc. 7)[1].  Attached to Holder's motion are materials outside the pleadings, including: (1) declaration of Robert Abraham, supervisory attorney with the Complaint Adjudication Office of DOJ (Doc. 9-1); (2) United States Postal Service "Track & Confirm" receipt (Doc. 9-1, at 5); (3) certified mail return receipt (Doc. 9-1, at 7); (4) declaration of Kimya Jones, agency representative in the pending Merit Systems

---

   [1]Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record.

Protection Board ("MSPB") appeal (Doc. 9-2); (5) final agency action and notice of right of appeal to the EEOC or court action ("right-to-sue letter") (Doc. 9-3); and (6) decision by the EEOC Administrative Judge Clarence Bell (Doc. 9-3, at 5).

Pursuant to Rule 12(d), F.R.Civ.P., Holder's motion to dismiss has been deemed a motion for summary judgment under Rule 56, F.R.Civ.P.  Both parties have treated it as such, and if it were not treated as such by them, the court would nevertheless grant summary judgment *sua sponte* for defendant under the authority of Rule 56(f)(3), F.R.Civ.P.

After Todd filed a responsive brief (Doc. 11), Holder replied (Doc. 12).  Subsequently, and pursuant to the court's order (Doc. 16), both parties filed supplemental submissions (Docs. 20,22) in response to questions posed by the court during an oral hearing held on March 21, 2012.  Upon consideration of the entire record, the court finds Holder entitled to summary judgment.

Todd has also filed several motions to amend her complaint (Docs. 17,19,21,25).  She seeks to reframe her complaint, to add new causes of action, and to name new parties, including fictitious parties.  Todd's motions to amend will be denied for several reasons, some of which will hereinafter be discussed.

**RELEVANT FACTS**

Todd was employed by DOJ (of which Holder is the chief executive and administrative officer) at the Office of United

States Attorney for the Middle District of Alabama ("USAO MD AL") in Montgomery, Alabama from April 20, 2003 until June 9, 2009, when she was removed from federal service.[2]  The events giving rise to Todd's complaint or complaints began around July 5, 2007.  On that date, Todd filed a pre-complaint with the EEO staff in Washington, D.C., alleging discrimination by the DOJ on the basis of gender and sexual harassment.  Todd claims that retaliation against her began immediately and escalated over time.  On November 1, 2007, Todd executed an Agency Agreement to Mediate in regard to her EEO complaint.  The mediation agreement contained a confidentiality clause pursuant to 5 U.S.C. § 574.  Todd alleges that confidential information she disclosed to the mediator was later used against her by the DOJ in a retaliatory referral for criminal investigation to the DOJ Office of Inspector General ("OIG").  Todd further alleges that this information was both false and in violation of 5 U.S.C. § 574.

In early December 2007, Ronald S. Gossard, Jr. ("Gossard"), criminal investigator for DOJ OIG, conducted an internal investigation of Todd.  On March 19, 2008, Melvin Hyde ("Hyde"), USAO for the Middle District of Georgia, declined Gossard's request

---

[2]Todd appealed her termination to the MSPB on the basis of reprisal for participation in protected activity.  Todd alleges that she engaged in two types of protected activity: (1) opposition to unlawful activity, and (2) opposition to discriminatory conduct and practices in the EEOC process.  The issue of Todd's termination is currently under the jurisdiction of the MSPB.

for criminal prosecution of Todd, citing lack of prosecutorial merit.³ On March 27, 2008, Todd, under threat of termination, was compelled to submit to a so-called *Kalkines*⁴ interview by Gossard. On or about June 12, 2008, Gossard released the OIG Report of Investigation ("OIG Report"), which stated that insufficient evidence had been developed to support the allegations of misconduct by Todd. However, Todd alleges that Gossard continued to use the disputed and unsubstantiated allegations as "facts" to support the adverse conclusion about Todd that he had already reached. Todd alleges that the DOJ continues to retaliate against her through obstruction of her efforts to obtain gainful employment, disseminating false information from the OIG Report to potential employers. Todd has not named any prospective employer to which the alleged false information has been disseminated.

Todd filed her instant action after she received the final agency decision, which adopted and confirmed the adverse order

---

³In May 2008, Hyde declined for the second time the request of Gossard for a criminal prosecution of Todd, again citing lack of prosecutorial merit.

⁴Todd uses the phrase "*Kalkines* interview" throughout her pleadings. Under *Kalkines v. United States*, 473 F.2d 1391 (Fed. Cl. 1973), a government employee can be terminated for not replying to employment or performance-based inquiries if he is adequately informed both that he is subject to discharge for not answering and that his replies (and their fruits) cannot be used against him in a criminal prosecution. Todd has not stated whether or not she, prior to allegedly being subjected to a "*Kalkines* interview", was duly advised that she would have immunity with respect to her answers. She has not alleged any violations or otherwise unlawful claims against defendant as to the "*Kalkines* interview."

entered by EEOC Administrative Judge Bell.  In her complaint, Todd makes claims of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as the Civil Rights Act of 1991, 42 U.S.C. § 1981, and violations of the Privacy Act of 1974.  Todd alleges that DOJ subjected her to discrete acts of retaliation because of her opposition to allegedly unlawful and discriminatory practices and because of her participation in prior protected activity.  Todd alleges that Patricia Snyder Watson ("Watson"), former First Assistant United States Attorney for the Middle District of Alabama, unlawfully obtained and willfully disclosed information from Todd's confidential security file in violation of 5 U.S.C. § 552.[5] Besides the unnamed defendants she seeks to sue, Todd, as she must, sues Holder in his official capacity on a theory of *respondeat superior* as liable for the allegedly wrongful acts of DOJ employees and/or other government employees.  Todd also alleges that USAO MD AL unlawfully maintained a system of records containing a copy of Todd's security file.[6]  Todd requests unspecified damages with respect to all these violations including her statutory right to

---

[5]Watson admits that she had accessed Todd's file, but that it was in order to prepare for giving her sworn statement to the EEOC investigator in April 2008.

[6]Todd incorrectly cites to 5 U.S.C. § 553(i)(3) in her complaint. (Doc. 1, ¶ 69).  The correct statute appears to be 5 U.S.C. § 552a(e)(4).  However, as set out below, Todd's Privacy Act claims, if deemed made against a proper defendant, are barred by the two year statute of limitations.

privacy. She seeks injunctive relief, compensatory damages, costs, and attorney's fees (although, as stated *supra*, she has no attorney).

Because the Rule 56 motion turns largely on procedural matters and facts not within the evidence presented to or considered by the Administrative Judge, further elaboration of the underlying facts alleged by Todd is unnecessary.

## DISCUSSION

**Motions to Amend Complaint and Exclusivity of Remedy**

In Todd's "Corrected First Amendment to Plaintiff's Complaint" (Doc. 25), she says: "Plaintiff alleges that the defendants are federal officials who deprived plaintiff of her civil rights under color of law and subjected plaintiff to unlawful discrimination, harassment, a hostile work environment and retaliation predicated upon plaintiff's participation in the agency EEO process." (Doc. 25, at 7). In addition to Todd's retaliation claims brought under Title VII and her Privacy Act claims, she invokes 1) 28 U.S.C. § 1331, 2) the Civil Rights Act of 1991, 3) 28 U.S.C. § 1658, 4) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 5) the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. (Doc. 25, at 11). All of her proposed amendments not only fail to cure the defects in her original complaint, but are futile, as will hereinafter become more apparent. Todd's motions for leave to amend will be denied. To

grant them would not only create more confusion than now exists, but would be entirely inconsistent with this court's subsequent holding that the action is, for the most part, barred by the 90-day statute of limitations.

Title VII, and the Civil Service Reform Act of 1978 ("CSRA"), provide the exclusive remedy for a federal employee in which the employee alleges discrimination or harassment based on race, color, religion, sex or national origin, as well as retaliation, occuring within the context of their federal employment. *See* 42 U.S.C. § 2000e-16; *Brown v. General Services Admin.*, 425 U.S. 820, 829 (1976)(Title VII provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination"); *United States v. Fausto*, 484 U.S. 439 (1988); *Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983); *cf. Bush v. Lucas*, 462 U.S. 367 (1983). As such, Title VII's and the CSRA's exclusivity prevents Todd from invoking or relying on any federal statutory or constitutional provisions or theories in support of her claims of discrimination except those available under Title VII. *See Stephens v. Dept. of Health and Human Services,* 901 F.2d 1571, 1575 (11th Cir. 1990)(citing *Fausto* and holding that CSRA is the is the exclusive remedy of the federal employee). Merely recasting her allegations as "constitutional violations" does not help. *See Stephens*, 901 F.2d at 1576. Citing *Schweiker v. Chilicky*, 487 U.S. 412, 413 (1988), the *Stephens* court

noted that the CSRA provides 'adequate remedial mechanisms' for alleged constitutional violations that may occur in the course of its administration. *Id*. *See also Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992)(noting that CSRA encompasses constitutional claims); *Dynes v. Army Air Force Exchange Service*, 720 F.2d 1495, 1498 (11th Cir. 1983)(declining to create a new remedy "regardless of which constitutional right has been violated").

Without naming them, Todd seeks to add defendants in their individual capacities and to sue them under *Bivens.* There is no such nonstatutory remedy for claims arising out of a federal employee's "employment relationship that [was] governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Dynes*, 720 F.2d at 1498. The Eleventh Circuit has "recognized that the comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related *Bivens* actions by federal employees." *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998)(citing *Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571, 1577 (11th Cir. 1990)). Because Todd's purported constitutional claims and purported *Bivens* claims would eventually have to be dismissed as a matter of law, her motions to amend her complaint to add them must be denied as futile. A federal employee's being allowed by statute to file a separate action in federal court to consider her discrimination claims does

not open the door for her to present to the court entirely new claims against new entities on new theories. It has an important *de novo* component but does not invite the kitchen sink.

**Title VII**

Title VII clearly provides that within 90 days after receipt of a right-to-sue letter "a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-16(c); *see also* 42 U.S.C. § 2000e-5(f)(1). The "respondent named in the charge" here was Holder. This 90-day filing period is a statute of limitations. In order for Todd to maintain her suit, she has the burden of establishing that she filed her complaint within 90 days of her receipt of the right-to-sue letter issued by the DOJ Complaint Adjudication Office. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). Holder's affirmative defense of the statute of limitations places the burden on Todd to establish that she met the 90-day filing requirement. *Id*. at 1234.

It is undisputed that Todd exhausted her internal administrative remedies, that the DOJ found against her on May 26, 2011, and that the Complaint Adjudication Office mailed her a right-to-sue letter on July 26, 2011. Todd disputes the date upon which she "received" this right-to-sue letter .

Although Todd plausibly says that she did not physically and personally "receive" the letter in her hands until August 4, 2011, Holder has presented incontrovertible evidence to demonstrate that

the letter was legally delivered, and thus "received," within the meaning of the relevant statute, on August 3, 2011.[7] The evidence presented by Holder on this fact is uncontested. Todd merely states that "no evidence has been introduced to show that the parcel was delivered to plaintiff on August 3, 2011." (Doc. 22, at 2). Todd says that the right-to-sue letter was not actually in her hands until August 4, 2011. She presents no evidence to explain why she did not "receive" it on August 3, as proven by the certified mail receipt executed on August 3, 2011. Her conclusory contention in this regard is insufficient to overcome the presumption that a properly addressed piece of certified mail was received, as reflected by the receipt, on the date the receipt was signed. *See Law v. Hercules, Inc.*, 713 F.2d 691, 693 (11th Cir. 1983)(per curiam)(holding 90-day period began when claimant's 17-year-old son signed the return receipt for EEOC's right-to-sue letter in spite of claimant's contention that he did not see the letter until one or two days later); *see also Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992).

The statute makes clear that the 90-day period runs from the "giving of such notice" rather than from the date the notice is finally placed **in the hands of the addressee**. When Todd finally

---

[7]See Doc. 9, DEX 1, certified mail receipt as well as tracking information from United States Postal Service website. The right-to-sue letter was mailed to Todd at P.O. Box 19962, Birmingham, Alabama. Todd uses this same address in the instant action.

saw the right-to-sue letter, on August 4, 2011, and visually observed that it had been sent via certified mail to her post office box, and was signed for her by "J King" on August 3, 2011, she was obligated to understand that the 90-day period had already started to run.  It expired on November 1, 2011.  Todd filed her action on November 2, 2011, one day after the statute of limitations had expired. "[A]n action filed within 91 days is still time barred." *Prophet v. Armco Steel, Inc.* 575 F.2d 579, 580 (5th Cir. 1978).[8]

Todd conspicuously has not **sworn** that she had not given her post office box key to another person or persons on or prior to August 3, 2011, creating ostensible authority to access her box and to receipt for her mail.  The fact that **someone** had her key on August 3, 2011 and brought her mail to her proves ostensible authority.  Todd has said, not under oath, that she does not know "J King," but she admits that she has routinely given her post office box key to family members to collect her mail.  According to her, such persons would routinely place her mail on her bed after retrieving it from her box.  This is entirely consistent with what happened here.

---

[8]In *Bonner v. City of Prichard Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions from the former Fifth Circuit handed down prior to October 1, 1981.

Todd has not alleged trickery or foul play, either by the DOJ or by the EEOC, much less offered any evidence of it. Todd's unsworn statements are not sufficient to rebut the unequivocal evidence presented by Holder.[9]

Todd **alternatively** requests that her filing deadline be equitably tolled. She argues:

> To the extent that Defendant provided erroneous, inaccurate or false information to Plaintiff regarding the appeals process, information upon which Plaintiff relied in the timely filing of her Complaint, Plaintiff asserts equitable tolling due to Defendant's conduct in causing any delay of Plaintiff's filing of her civil action on November 2, 2011 as Defendant clearly informed Plaintiff that she had 90 days from the receipt of the [right-to-sue] letter to file a civil action in Federal Court.

(Doc. 11, at 4). The court finds no evidence of "erroneous, inaccurate or false information." Todd asks the court to ignore presumptions and Holder's overwhelming evidence, and to speculate with her that something mysterious happened that somehow relieved her of the obligation to file her action on or before the 90th day after her right-to-sue letter was "received" and provided her notice within the meaning of the statute.

---

[9] With his motion, Holder submitted a copy of the certified mail return receipt and a copy of the United States Postal Service "Track & Confirm" receipt. (Doc. 9). Both pieces of evidence show delivery on August 3, 2011. With his supplemental response, Holder submitted the declaration of Joel T. Morrison, IV, acting manager of the Green Springs Post Office, which houses the post office box at issue. (Doc. 20).

Equitable tolling is "reserved for extraordinary facts" and is to be applied sparingly. *Jackson v. Astrue*, 506 F.3d 1349, 1354 (11th Cir. 2007).  This is not a case for applying it. Misunderstanding the law, even for a non-lawyer, is not an extraordinary circumstance.  Todd's failure to bring suit timely cannot be blamed on anyone else.  "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).  Because there is no issue of material fact on this point, Todd is barred by the 90-day statute of limitations as to all of her claims except her would-be claims under the Privacy Act.

**Privacy Act**

Holder persuasively argues that, **if** any of Todd's claims survive the 90-day bar, Todd's Privacy Act claims fail for a variety of other reasons, including: (1) abandonment; (2) lack of injury and therefore lack of standing; and (3) failure to file her claim within the two-year statute of limitations provided by the Privacy Act.

In her responsive brief (Doc. 11), Todd does not dispute, nor even respond to, any of Holders's arguments with respect to the Privacy Act claims.  She provides nothing in opposition to her Privacy Act claims, and thus, as a matter of law, abandons all such claims. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998)(arguments not clearly raised in the briefs are considered

abandoned); *Continental Technical Services, Inc. V. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)("An argument not made is waived....").

Assuming *arguendo* that Todd did not abandon her Privacy Act claims, they are foreclosed by the Act's two-year statute of limitations. 5 U.S.C. § 552a(g)(5).  Todd filed this action on November 2, 2011, approximately three and a half years after the alleged Privacy Act violations of April, 2008.  In her supplemental response (Doc. 22), Todd actually admits that her Privacy Act claims are barred by the said two-year statute of limitations.  If this is not abandonment, this court does not know what abandonment consists of.

## CONCLUSION

For the foregoing reasons, Todd's motions to amend her complaint will be denied, and Holder will be granted summary judgment.  An appropriate separate order will be entered.

DONE this the 7th day of May, 2012.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE